Filed 12/7/21  P. v. Jones CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and<br>    Respondent,<br><br>    v.<br><br>DANTE DWAN JONES,<br><br>    Defendant and<br>    Appellant. | B311768<br><br>(Los Angeles County<br>Super. Ct. No. BA317885) |

APPEAL from an order of the Superior Court of Los Angeles County, Curtis B. Rappe, Judge.  Affirmed.

Dante Dwan Jones, in pro. per.; Cheryl Lutz, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

———————————————

Dante Dwan Jones shot Christian Starr during an incident at a market on February 23, 2007.  A jury convicted him of attempted murder and found true allegations that he had personally used and intentionally discharged a firearm which proximately caused great bodily injury within the meaning of Penal Code section 12022.53, subdivisions (b), (c), and (d), and personally inflicted great bodily injury within the meaning of section 12022.7, subdivision (c)(8).[1]  Based on the jury's verdict and Jones's admission of a prior juvenile adjudication for robbery, the trial court sentenced Jones to 39 years to life in state prison.

On January 13, 2021, Jones petitioned the trial court for resentencing under section 1170.95, alleging that he had been convicted of attempted murder under a theory that he could no longer be convicted under because of changes made to sections 188 and 189 effective January 1, 2019 by Senate Bill No. 1437. (See Stats. 2017, ch. 1015, §§ 1-4.)  The trial court declined to appoint counsel, concluding instead that Jones was ineligible for relief under section 1170.95 as a matter of law, and denied Jones's petition on January 19, 2021.

The landscape of the law applicable to Jones's appeal has changed significantly since the trial court entered its order.  In July, the Supreme Court issued its opinion in *People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*).  And in October, the Governor signed Senate Bill No. 775 (S.B. 775), which will become effective on January 1, 2022.

Read together, *Lewis* and S.B. 775 establish that the trial court erred when it denied Jones's petition without appointing counsel.  Nevertheless, we conclude that the trial court's error

_____

[1] Further undesignated statutory references are to the Penal Code.

was harmless under *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*). We will affirm the trial court's order.

## BACKGROUND

The facts and procedural background regarding Jones's conviction are from the opinion in Jones's direct appeal.

### A. The Shooting

"[O]n February 23, 2007, Christian Starr was shot at the Three Star Market in Los Angeles. Owner Debbie Lee testified that there were eight surveillance cameras in her store, which had only one entrance/exit door. After the shooting, she met with Los Angeles Police Department (LAPD) Detective John Ayala and other officers and showed them the surveillance video of the shooting, which was transferred to a DVD and was played for the jury. Still photos printed from the video were also admitted into evidence.

"LAPD Officer Miguel Reynoso responded to the Three Star Market on the day of the shooting, and with other officers watched part of the surveillance video. Officer Reynoso saw a freeze frame of a man walking toward one of the cameras away from the shooting victim lying on the ground, and identified the man as Jones. Officer Reynoso was assigned to the area, had (a year and a half or two years earlier) conducted a traffic stop of a vehicle in which Jones was a passenger, and had seen him in the neighborhood a number of times.

"Officer Reynoso went to Jones's residence, where a few hours later he saw a white Chevy Caprice pull up. He broadcast the information to other officers, who conducted a traffic stop of the Caprice. Jones was in the front passenger seat and was taken into custody. He was wearing the same clothing that appeared in the video. The search recovered a five-shot revolver

3

loaded with two live rounds, but containing no empty casings, which would have remained inside the gun after it was shot.

"Detective Ayala testified that he was the investigating officer in the case, and that he had gone to see Starr in the hospital on the night of the shooting. Starr was unconscious. The parties stipulated that Starr suffered great bodily injury as a result of the gunshot wound.

"Jones testified on his own behalf for the defense. He admitted he was the man shown in the surveillance video shooting Starr. He knew Starr from around the neighborhood, and had no problems with him before November 12, 2006. On the evening of that day Jones had gone to an apartment building to mediate a dispute between a friend and another man. While Jones was outside talking to the two men, Starr intervened, and a fist fight ensued. Starr pulled a gun and shot Jones in the leg. Starr shot Jones again as Jones was running away. Jones ran home and the police took him to the hospital in an ambulance. No police officer ever asked him who shot him. After this incident, Jones bought on the street the gun that he used to shoot Starr, and kept it with him for protection everywhere he went.

"On February 23, 2007, Jones went to the Three Star Market to buy an iced tea. As he walked toward the cash register, he saw Starr entering the store and thought that Starr smirked at him. He followed Starr to the back of the market, and when Starr reached into his pocket, Jones thought Starr was going to shoot him, and he drew his gun and shot Starr first. Jones ran home. He took the empty shell casing out of his gun. He hid the gun under the car seat because it was illegal and he hoped the police wouldn't find it.

4

"In rebuttal, LAPD Detective Enrique Robledo testified that he had investigated the November 2006 shooting and had interviewed Jones some time afterward. Jones told him that a white car had driven by and someone shot at him, and Jones didn't see who it was. Although Detective Robledo gave Jones his telephone number, Jones never contacted him." (*People v. Jones* (Feb. 10, 2010, B211456) pp. 3-4 [nonpub. opn.] (*Jones I*).)

## B. Jones's Trial

"An amended information filed May 18, 2007 charged Jones with attempted murder in violation of . . . sections 664 and 187, subdivision (a), and alleged that the attempted murder was committed willfully, deliberately, and with premeditation under section 664, subdivision (a). The information further alleged that Jones personally used and intentionally discharged a firearm which proximately caused great bodily injury within the meaning of section 12022.53, subdivisions (b), (c)[,] and (d), and personally inflicted great bodily injury within the meaning of section 12022.7, subdivision (a) making the offense a serious felony within the meaning of 1192.7, subdivision (c)(8). The information also alleged that Jones had a prior juvenile adjudication for robbery, pursuant to sections 667, subdivisions (b) through (i), and 1170.12[,] subdivisions (a) through (d). Jones pleaded not guilty and denied the special allegations.

"The trial court granted Jones's motion to bifurcate trial of the prior conviction allegation, and Jones admitted the prior conviction allegation as true. After a two-day trial, a jury convicted Jones of attempted murder, but found not true the allegation that Jones committed the attempted murder willfully, deliberately, and with premeditation. The jury also found the weapon allegations to be true.

5

"The trial court sentenced Jones to state prison for 39 years to life: 14 years on count 1 (attempted murder) (the middle term, 7 years, doubled pursuant to sections 667, subdivisions (b) through (i), and 1170.12, subdivisions (a) through (d)), plus a consecutive 25-years-to-life term under section 12022.53, subdivision (d). The court imposed, and then stayed, a 20-year enhancement under section 12022.53, subdivision (c)." (*Jones I*, *supra*, B211456 at p. 2.)

We affirmed the trial court's judgment. (*Jones I*, *supra*, B211456 at p. 12.)

## C. Jones's Section 1170.95 Petition for Resentencing

Jones filed a petition under section 1170.95 on January 13, 2021, asking the trial court to resentence him for his conviction because, he alleged, he was convicted of attempted murder under the natural and probable consequences doctrine or the felony murder rule and he could no longer be convicted of first or second degree attempted murder because of changes made to sections 188 and 189 by Senate Bill No. 1437 effective January 1, 2019. The trial court summarily denied Jones's petition on January 19, 2021, without appointing counsel.

In its order denying Jones's petition, the trial court explained that it had reviewed the jury instructions given in Jones's matter, and that the jury was instructed that it must conclude that Jones acted with intent to kill the victim to find him guilty of attempted murder: "The court's review of the jury instructions given contains no instructions on either [the natural and probable consequences doctrine or the felony murder rule]. These instructions required the jury to find that he acted with intent to kill the victim. Furthermore, he was prosecuted as the direct perpetrator of the attempted murder."

6

The trial court denied Jones's petition for two reasons. First, the trial court concluded that section 1170.95 did not apply to convictions for attempted murder. Second, the trial court concluded that section 1170.95 did not apply "where the defendant was tried on the theory that he was the direct and only perpetrator, and the natural and probable consequences doctrine was not involved."

Jones filed a timely notice of appeal and this court appointed counsel for him. Jones's appellate counsel filed a brief raising no issues and requesting that we independently review the record pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*). She notified Jones that she would be filing the brief and that Jones could file a supplemental brief with this court. Jones filed a supplemental brief contending that the trial court erred when it denied his petition because he contends that the jury was instructed on the natural and probable consequences doctrine.

### D. Post-Appeal Legal Developments

#### 1. *Lewis*

While Jones's appeal was pending here, the Supreme Court issued its opinion in *Lewis, supra*, 11 Cal.5th 952. In that opinion, the court concluded that "petitioners are entitled to the appointment of counsel upon the filing of a facially sufficient petition [citation] and that only *after* the appointment of counsel and the opportunity for briefing may the superior court consider the record of conviction to determine whether 'the petitioner makes a prima facie showing that he or she is entitled to relief.' " (*Id.* at p. 957.) The trial court's failure to appoint counsel, the Supreme Court concluded, was subject to a harmless error analysis under *Watson, supra*, 46 Cal.2d 818. (*Lewis*, at pp. 957-958.)

7

**2. S.B. 775**

On October 5, 2021, the Governor signed S.B. 775, which will become effective on January 1, 2022. (Cal. Const., art. IV, § 8, subd. (c); Gov. Code, § 9600, subd. (a).) As pertinent to this appeal, S.B. 775 amends section 1170.95 to include as eligible for resentencing persons convicted of "attempted murder under the natural and probable consequences doctrine." (See Stats. 2021, ch. 551, § 2, subd. (a).)

**E. Request for Supplemental Briefing**

Based on the enactment of S.B. 775, we requested supplemental briefing from the parties regarding the significance, if any, of S.B. 775 in this case and set a briefing schedule on that question. Counsel for Jones declined to file a supplemental brief.

**DISCUSSION**

Because Jones's appeal is not from his conviction, he is not entitled to our independent review of the record pursuant to *Wende* or its federal constitutional counterpart, *Anders v. State of Cal.* (1967) 386 U.S. 738. (See *People v. Kelly* (2006) 40 Cal.4th 106, 119; *People v. Serrano* (2012) 211 Cal.App.4th 496, 503 (*Serrano*); *Pennsylvania v. Finley* (1987) 481 U.S. 551, 559.)[2] He is entitled, however, to file a supplemental brief and, if he files

---

[2] Under *Serrano,* in a criminal appeal in which *Wende* does not apply, counsel who finds no arguable issues is still required to (1) inform the court that counsel has found no arguable issues to be pursued on appeal; (2) file a brief setting out the applicable facts and law; (3) provide a copy of the brief to appellant; and (4) inform the appellant of the right to file a supplemental brief. (*Serrano, supra,* 211 Cal.App.4th at p. 503, citing *Conservatorship of Ben C.* (2007) 40 Cal.4th 529, 544.)

such a brief, to our review of his contentions. (See *Serrano*, at p. 503.) We therefore consider Jones's contentions in turn.

At the outset, we note that the trial court's order denying Jones's petition was not erroneous when it was filed. The error we find is a function of the enactment of S.B. 775, which will go into effect on January 1, 2022.

Section 1170.95 allows one "convicted of felony murder or murder under a natural and probable consequences theory" to "file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts . . . ." (§ 1170.95, subd. (a).) "[P]etitioners are entitled to the appointment of counsel upon the filing of a facially sufficient petition [citation] and . . . only *after* the appointment of counsel and the opportunity for briefing may the superior court consider the record of conviction to determine whether 'the petitioner makes a prima facie showing that he or she is entitled to relief.' " (*Lewis*, *supra*, 11 Cal.5th at p. 957.)

Because Jones's petition alleged that he was convicted of *attempted* murder and because section 1170.95 applies only to murder convictions, when it was filed the petition was *not* facially sufficient and could have been denied for that reason alone. (See *People v. Munoz* (2019) 39 Cal.App.5th 738, review granted Nov. 26, 2019, S258234.) S.B. 775, however, amends section 1170.95 to expressly include as eligible for resentencing those convicted of "attempted murder under the natural and probable consequences doctrine."[3] (Stats. 2021, ch. 551, § 2, subd. (a).)

---

[3] S.B. 775 will not go into effect until January 1, 2022. "New legislation generally applies to all judgments which are not final as of the effective date of the new statute. [Citations.] Where it is unlikely that a judgment will be final by the effective

S.B. 775 renders Jones's petition for resentencing facially sufficient to invoke the trial court's duty to appoint counsel to represent Jones under section 1170.95, subdivision (b)(3). Because *Lewis* established that a section 1170.95 petitioner is entitled to the appointment of counsel upon the filing of a facially sufficient petition, the trial court's denial of Jones's petition before appointing counsel was erroneous under section 1170.95 as it will be effective January 1, 2022. (See *Lewis*, *supra*, 11 Cal.5th at p. 957.)

*Lewis* also instructs us to consider whether the trial court's error was prejudicial under *Watson*, *supra*, 46 Cal.2d 818. We conclude the error was harmless. Jones contends in his supplemental brief that the jury was instructed on the natural and probable consequences doctrine and that it is possible that the jury could have convicted him under that theory. Jones's argument demonstrates that he misunderstood the jury instructions.

As the trial court explained in its order denying Jones's petition, Jones was "tried on the theory that he was the direct and only perpetrator, and the natural and probable consequences doctrine was not involved."

Jones's argument relies on the inclusion of CALCRIM No. 3150 in his jury instructions because that instruction includes

_____

date of new legislation, courts have remanded matters to the trial courts so that the new statute can be applied after its effective date." (*People v. Montes* (2021) ___ Cal.App.5th ___, ___ [B312152].) It is clear, however, that our order will not be final until after S.B. 775's effective date. Following our colleagues in Division 8, "[t]o promote judicial economy and efficiency, we opt to apply the revised provisions set forth in [S.B.] 775 to appellant's case now." (*Montes*, at p. ___.)

the words "natural and probable consequences." CALCRIM No. 3150, however, is an instruction regarding the allegations that Jones personally and intentionally discharged a firearm and whether, in doing so, he caused great bodily injury. The instruction is entirely irrelevant without a predicate guilty verdict on Jones's attempted murder charge. Indeed, the first sentence of CALCRIM No. 3150 as it was delivered to Jones's jury is: "If you find the defendant guilty of [attempted murder], you must then decide whether the People have proved the additional allegations that the defendant personally and intentionally discharged a firearm during that crime and, if so, whether the defendant's act caused great bodily injury." Several paragraphs later (still in CALCRIM No. 3150), the jury was instructed that "[a]n act causes great bodily injury if the injury is the direct, natural, and probable consequence of the act and the injury would not have happened without the act. A natural and probable consequence is one that a reasonable person would know is likely to happen if nothing unusual intervenes. In deciding whether a consequence is natural and probable, consider all the circumstances established by the evidence."

That CALCRIM No. 3150 contains the words "natural and probable consequences" is irrelevant for purposes of Jones's section 1170.95 petition. The instruction demonstrates that the words "natural and probable consequences" were not related to whatever findings the jury would be required to make regarding the attempted murder charge. Indeed, the jury was instructed that to find Jones guilty of attempted murder, it must find that the People had proven that "[t]he defendant took at least one direct but ineffective step toward killing another person" and that "[*t*]*he defendant intended to kill that person*." (Italics added.)

11

The record of conviction in this matter establishes that Jones was neither tried nor convicted of attempted murder under a natural and probable consequences theory. Jones cannot establish that he "could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019," as required by amended section 1170.95, subdivision (a)(3). (Stats. 2021, ch. 551, § 2.) On that basis, as a matter of law Jones cannot establish that he is entitled to relief under any version of section 1170.95. The trial court's error—created by S.B. 775—is harmless. (See *Watson*, *supra*, 46 Cal.2d at p. 836.)

Although Jones is not entitled to *Wende* review on this appeal, we have examined the entire record and are satisfied that Jones's counsel has fully complied with her responsibilities under *Wende* and *Serrano*. (See *Wende*, *supra*, 25 Cal.3d at p. 441; *Serrano*, *supra*, 211 Cal.App.4th at p. 503.) No arguable issues exist.

## DISPOSITION

The trial court's order is affirmed.
NOT TO BE PUBLISHED


CHANEY, J.

We concur:


ROTHSCHILD, P. J.          BENDIX, J.

12